UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEAN BAIZER, | |
| Plaintiff, | No. 16 C 2587 |
| v. | Magistrate Judge Mary M. Rowland |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

# MEMORANDUM OPINION AND ORDER

Plaintiff Dean Baizer filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et. seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security and is substituted for her predecessor as the proper defendant in this action. Fed. R. Civ. P. 25(d).

2d 973, 977 (N.D. Ill. 2001).[2] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The standard for determining DIB is virtually identical to that used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB on July 19, 2012, alleging that he became disabled on November 3, 2011, due to lower back pain, spondylolysis,[3] and poor blood circulation in the legs. (R. at 94). The application was denied initially on September 12, 2012, and upon reconsideration on April 4, 2013, after which Plaintiff filed a timely request for a hearing. (*Id.* at 94–102, 103–116). On June 18, 2014, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 35-93). The ALJ also heard testimony from Ronald A. Semerdjian, M.D., a medical expert, and Craig Johnston, a vocational expert (VE). (*Id.*).

The ALJ denied Plaintiff's request for benefits on September 25, 2014. (R. at 12–28). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff did not engage in substantial gainful activity from November 3, 2011, his alleged onset date, through September 25, 2014, the date of the ALJ's decision. (*Id.* at 17). At step two, the ALJ found that Plaintiff's lumbar strain and sprain; L5 bilateral spondylolysis with mild spondylolisthesis; L5-S1 minimal grade one anterolisthesis with bilateral pars defect but no central stenosis;[4] bilateral neu-

---

[3] "Spondylolysis is a crack or stress fracture in one of the vertebrae, the small bones that make up the spinal column . . . In some cases, the stress fracture weakens the bone so much that it is unable to maintain its proper position in the spine—and the vertebra starts to shift or slip out of place. This condition is called spondylolisthesis." (orthoinfo.aaos.org/topic.cfm?topic=a00053, last visited March 16, 2017).

[4] "In anterolisthesis, the upper vertebral body is positioned abnormally compared to the vertebral body below it. More specifically, the upper vertebral body slips forward on the one below." (www.cedars-sinai.edu/Patients/Health-Conditions/Anterolisthesis.aspx, last visited March 16, 2017).

ral foraminal annular fissures with mild neural foraminal narrowing;[5] and left groin meralgia paresthetica were severe impairments.[6] (*Id.* at 17–18). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.* at 18).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[7] and determined that Plaintiff could perform sedentary work, except "[he] should avoid climbing ladders, ropes, and scaffolds and may only occasionally stoop, crouch, and bend. He should avoid exposure to dangerous moving machinery or unprotected heights, may not balance on uneven or slippery surfaces, and should have no exposure to extreme cold, at zero degrees Celsius or less." (R. at 19). At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. (*Id.* at 26). Based on Plaintiff's RFC, age, education, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including production assembler, parts

---

[5] "Neuroforaminal narrowing refers to a reduction of the size of the opening in the spinal column through which the spinal nerve exits." (www.spine-health.com/glossary/neuroforaminal-narrowing, last visited March 16, 2017).

[6] "Meralgia paresthetica is a disorder characterized by tingling, numbness, and burning pain in the outer side of the thigh. The disorder is caused by compression of the lateral femoral cutaneous nerve, a sensory nerve to the skin, as it exits the pelvis." (www.ninds.nih.gov/Disorders/All-Disorders/Meralgia-Paresthetica-Information-Page, last visited March 16, 2017).

[7] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

4

sorter, and cashier. (*Id*. at 26–27). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability, as defined by the Act. (*Id*. at 26–27).

The Appeals Council denied Plaintiff's request for review on March 15, 2016. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue,* 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evi-

5

dence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. RELEVANT MEDICAL EVIDENCE

On October, 12, 2010, Plaintiff went to the Emergency Room after slipping and falling down two stairs at work, resulting in right lower back pain radiating to the lower leg. (R. at 383–96). A lumbar spine x-ray indicated bilateral spondylolysis with spondylolisthesis, disc space narrowing, and bilateral facet arthropathy. (*Id.* at 396). Magnetic Resonance Imaging (MRI) results showed minimal anterolisthesis with bilateral pars defects, no central stenosis, and bilateral neural foraminal fissures with mild neural foraminal narrowing. (*Id.* at 423). On November 3, 2011, an

6

MRI showed slight progression of his grade 1 spondylolisthesis at L5-S1 which was associated with bilateral L5 spondylolysis. (*Id.* at 532).

Plaintiff's primary care physician, Wolf Peddinghaus, M.D., treated Plaintiff for five to six years. (R. at 1069). On November 15, 2011, Dr. Peddinghaus indicated that an MRI showed spondylolisthesis and that Plaintiff had an "insufficient response" to conservative treatment. (*Id.* at 919). He referred Plaintiff to a neurosurgery specialist and stated that Plaintiff "should not work [until] further notice." (*Id.*). On July 25, 2013, Dr. Peddinghaus reported that Plaintiff had significant acquired lumbar spinal stenosis with chronic lower back pain, sciatica, and bilateral knee weakness. (*Id.* at 1067). He opined that Plaintiff was "unfit to engage in gainful employment." (*Id.*).

On September 24, 2013, Dr. Peddinghaus completed a Lumbar Spine Medical Source Statement, opining that Plaintiff's work related limitations included: walking two to three blocks, sitting 15 minutes at a time, standing 15 minutes continuously; shifting positions at will; occasionally lifting/ carrying ten pounds; and being absent about two days monthly. (R. at 1070–72). In addition to lower back pain, Dr. Peddinghaus opined that Plaintiff had right side sciatica after prolonged sitting, reduced right knee motion, and an abnormal gait. (*Id.* at 1069–72).

On November 25, 2013, Dr. Peddinghaus indicated that Plaintiff had numerous treatment attempts including physical therapy, occupational therapy, and several epidural injections, none of which resulted in significant improvement. (R. at 1092). He opined that the Plaintiff's pain "will be chronic [and] any further intervention at

7

this time is not warranted." (*Id.*). He concluded that Plaintiff was not a good surgical candidate. (*Id.*). On July 15, 2014, Dr. Peddinghaus noted that Plaintiff's arthritis in the sacroiliac joints raised the possibility of sacroilitis, a condition that would cause pain in the lower back and tailbone area. (*Id.* at 1103).

On July 17, 2012, Unho Kim, M.D., evaluated Plaintiff and found on physical examination that Plaintiff had limited range of motion, reduced strength, and reproducible pain with motion and straight leg raising. (R. at 976–80). Dr. Kim wrote an "unable to work letter" for Plaintiff. (*Id.* at 979). On February 11, 2013, Dr. Kim physically examined Plaintiff and observed tenderness to palpation, decreased lumbar and extension, positive straight leg raising, and decreased right lower extremity strength. (*Id.* at 947–50).

On February 12, 2013, Dr. Kim completed a Physical Medical Source Statement, opining that Plaintiff: could walk one block, sit ten minutes at a time, stand ten minutes continuously; sit less than two hours in an eight-hour workday; stand or walk less than two hours in a workday; would need to shift positions at will; would require ten-minute breaks multiple times per hour due to pain and muscle weakness; would likely miss more than four days monthly if working; could rarely lift less than ten pounds; could never lift more than ten pounds; would require a cane for standing and walking due to pain and weakness; and would be off task 25% or more due to symptoms interfering with attention and concentration. (R. at 997–1000). On May 30, 2013, Dr. Kim wrote Plaintiff a second letter indicating that he was unable to return to work. (*Id.* at 1045).

8

At the hearing on June 18, 2014, Plaintiff testified he was first injured at his job in 2010, and returned to work until he was injured again about a year later on November 3, 2011. (R. at 47–50, 54). He reported that he tried medications, physical therapy, and epidural steroid injections, but his pain persisted. (*Id.* at 49–50, 53, 56, 61). After his injury and his inability to maintain a job, his wife and children left him, so he had to move in with his nephew. (*Id.* at 55, 58). He relies on his nephew to do most of the chores; he can do some light household chores but it takes him longer to do them and he needs to take breaks. (*Id.* at 58). Plaintiff can walk as much as a half mile at a time with the use of his cane, but then must stop due to striking pain in his lower back radiating down to his feet. (*Id.* at 48, 57). He can sit for ten to twenty minutes at a time before having pain. (*Id.* at 57). To relieve pain, he lies down or sits in a reclined position during the day. (*Id.* at 57, 60).

The ME opined that Plaintiff has spondylolysis and spondylolisthesis. (R. at 63–64, 78–79). The ME further testified that Plaintiff's conditions do not meet or medically equal a listing based on the lack of abnormal neurological findings contained in the record. (*Id.* at 69–70). He acknowledged that Plaintiff has pain in the lower back associated with spondylolisthesis, but that generally Plaintiff is neurologically "intact." (*Id.* at 65). He opined that as a result of Plaintiff's medical impairments, Plaintiff could: sit for six hours in an eight-hour workday; walk and stand for two hours in a workday; occasionally perform postural activities; could not work at unprotected heights or climb ladders; could lift 20 pounds occasionally and 10 pounds frequently; and should avoid extreme cold or slippery surfaces. (*Id.* at 83–84). The

9

ME noted that Plaintiff's borderline to moderate obesity may have an effect on his symptoms. (*Id.* at 71–72).

The VE testified that Plaintiff's past relevant work as a school custodian was performed at a medium level and possibly in the heavy demand range. (R. at 86). The ALJ asked the VE to consider an individual of Plaintiff's age, education, and work experience who could perform sedentary work with the following limitations: no climbing ladders, ropes, or scaffolds; occasionally stooping, crouching, kneeling, and crawling; no exposure to dangerous moving machinery or unprotected heights; no balancing on uneven or slippery surfaces; and no exposure to extreme cold at zero degrees Celsius or below. (*Id.* at 87–88). The VE testified that such a person would not be capable of Plaintiff's past work, but that the work of a production assembler, sorter, and cashier would be available. (*Id.* at 88–89). Upon further questioning, the VE testified that if that person unpredictably missed two or more days monthly on a sustained basis, there would be no jobs available. (*Id.* at 91–92).

## V. DISCUSSION

In support for his request for reversal, Plaintiff argues that the ALJ: (1) failed to properly weigh the opinion evidence; (2) committed multiple errors with symptom evaluation; (3) improperly assessed obesity; and (4) failed to follow Social Security Ruling 96-8p. (Dkt 15 at 7-15).

### A. The ALJ Did Not Properly Evaluate the Treating Physicians' Opinions

In Social Security disability claims, the opinion of a treating physician is afforded controlling weight if it is both "well-supported" by clinical and diagnostic evi-

10

dence and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *see Loveless v. Colvin,* 810 F.3d 502, 507 (7th Cir. 2016). Because a treating doctor has "greater familiarity with the claimant's condition and circumstances," *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003), an ALJ must "offer good reasons for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citations omitted); *see also Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). Those reasons must be "supported by substantial evidence in the record; a contrary opinion of a non-examining source does not, by itself, suffice." *Gudgel,* 345 F.3d at 470.

Furthermore, even where a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6). The ALJ must then provide a "sound explanation" for that decision. *Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011).

Here, the ALJ improperly discounted the opinions of Drs. Kim and Peddinghaus. It is undisputed that Drs. Kim and Peddinghaus are Plaintiff's treating physicians.

11

However, the ALJ gave insufficient reasons to discount their medical opinions as treating physicians.

The ALJ gave "little weight" to the medical source statements of treating physicians Drs. Kim and Peddinghaus because

> neither of them are supported by the objective medical evidence in the record. The doctors' opinions appear to rely quiet heavily on the subjective reports of pain and other symptoms provided by the claimant and seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported.

(R. at 25). The ALJ elaborated that the opinions "are inconsistent with the claimant's admitted activities of daily living", and that "[t]he opinions expressed are also quite conclusory." (*Id.*) The ALJ also asserted that "Dr. Peddinghaus' opinion, in particular, is inconsistent with even his own treatment notes." (*Id.*) Finally, the ALJ suggested that "the credibility and relevance of the opinions of these treating physicians must be carefully assessed because of the involvement with the workers' compensation claim." (*Id.* at 24). There are several flaws in the ALJ's reasoning.

### 1. *The ALJ erred when speculating without evidentiary support that the treating physician opinions were biased*

First, the ALJ failed to substantiate his speculation that Drs. Kim's and Peddinghaus's opinions were inappropriately based on Plaintiff's subjective complaints of pain and other symptoms. The Seventh Circuit has explained that "if the treating physician's opinion is . . . based *solely* on the patient's subjective complaints, the ALJ may discount it." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (emphasis added). However, the Seventh Circuit recently cautioned with regards to patient complaints of chronic pain that "physical pain often cannot be explained

12

through diagnostics," and that it thus was "illogical to dismiss the professional opinion of an examining [physician] simply because that opinion draws from the claimant's reported symptoms." *Aurand v. Colvin,* 654 F. App'x 831, 837 (7th Cir. 2016). "Almost all diagnoses require some consideration of the patient's subjective reports, and certainly [Plaintiff's] reports had to be factored into the calculus that yielded the doctor's opinion." *McClinton v. Astrue*, 2012 WL 401030, at *11 (N.D. Ill. Feb. 6, 2012). Here, the ALJ failed "to point to anything that suggests that the weight [Drs. Kim and Peddinghaus] accorded Plaintiff's reports was out of the ordinary or unnecessary, much less questionable or unreliable." *Davis v. Astrue*, 2012 WL 983696, at *19 (N.D. Ill. March 21, 2012). Thus, the ALJ failed to "build an accurate and logical bridge" from the evidence to his conclusion. *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014).

The Commissioner tries to justify the ALJ's unsubstantiated speculation by stating, "[t]his finding is supported by [the ME's] testimony that Dr. Kim's opinion seemed to be based on Plaintiff's statements rather than medical evidence." (Dkt. 20 at 4). This argument is unavailing for two reasons. First, this was not a justification relied upon by the ALJ, and is thus an impermissible post hoc rationalization. *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (*citing SEC v. Chenery Corp.,* 318 U.S. 80, 87–88 (1943))[8]. Second, the Commissioner mischaracterizes the ME's

---

[8] The Commissioner made a number of additional post hoc arguments throughout her response. For instance, regarding weighing the opinion evidence, the Commissioner argued that the reports of Drs. Oberoi and Munoz undermine the opinions of Drs. Kim and Peddinghaus. (Dkt. 20 at 3–5). The Court need not address each of these post hoc rationalizations as they were not reasons offered by the ALJ. *Scott*, 647 F.3d at 739 ("We confine our review to the rationale offered by the ALJ"). *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir.

13

testimony. On the pages cited by the Commissioner, the ME stated, with reference to Dr. Peddinghaus' opinion, not Dr. Kim's opinion, "He's describing what he—what he heard— . . . *and what he found in the exam*." (R. at 75–76) (emphasis added). Nowhere does the ME state that Drs. Kim or Peddinghaus inappropriately relied on Plaintiff's reports of symptoms in making their assessments. Moreover, neither the ALJ nor the Commissioner point to any evidence that Drs. Kim and Peddinghaus based their opinions *solely* on Plaintiff's subjective complaints, and, thus, this reason for denying weight to their opinions is without merit.

Similarly, the ALJ offers no support for his contention that the opinion of Dr. Kim may have been biased because it was given during Plaintiff's worker's compensation claim. Indeed, an ALJ's mere conjecture of a sympathetic response is not an acceptable basis for ignoring a treating physician's opinion. *Moss v. Astrue,* 555 F.3d 556, 560 (7th Cir. 2009). The ALJ must have a substantial evidentiary basis for finding bias by the treating physician. *Id.* Here, the ALJ makes a general statement that treating physicians "in the context of a workers' compensation claim often serve as an advocate for the claimant and describe excessive limitations to enhance the claimant's financial recovery." (R. at 24). However, the ALJ erred when offering no evidentiary basis for this statement or for his speculation that Dr. Kim's opinion specifically may be biased. This is error. *See White ex. rel. Smith v. Apfel*, 167 F.3d

---

2010) ("But these are not reasons that appear in the ALJ's opinion, and thus they cannot be used here"); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace.").

14

369, 375 (7th Cir. 1999) ("a decision based on speculation is not supported by substantial evidence.").

### 2. *The ALJ erred in rejecting the treating physician opinions as conclusory*

Further, the ALJ asserted that the opinions of the treating physicians were "conclusory," explaining that the "doctors provide very little explanation of the evidence relied on in forming their opinion." (R. at 25). Plaintiff argues that the opinions of treating physicians "should have been assessed in conjunction with the entirety of the associated record." (Dkt. 15 at 8). This Court agrees. The Seventh Circuit has found error in an ALJ's rejection of a physician's check box form as conclusory when "there is a long record of treatment" that supports the physician's notations on the form. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). Here, the ALJ erred when not taking the treatment records of the treating physicians into account when rejecting their opinions as conclusory.

### 3. *The ALJ failed to demonstrate that Plaintiff's daily activities were inconsistent with the treating physician opinions*

The ALJ argues that "the doctor[s'] opinions, which severely restrict [Plaintiff's] ability to sit, stand, or walk, are inconsistent with [Plaintiff's] admitted activities of daily living, which have already been described above in this decision."(R. at 25). The ALJ fails to articulate *how* the Plaintiff's reported daily activities contradict Drs. Kim's and Peddinghaus's findings nor does he point to any specific contradictions. *See Clifford*, 227 F. 3d at 871 (finding that the ALJ did not provide any explanation for his belief that the claimant's activities were inconsistent with the

15

treating physician's opinion and his failure to do so constitutes error). Without such a logical bridge, the Court cannot trace the path of the ALJ's reasoning.

Further, the ALJ does not properly take into account the limitations Plaintiff described in performing basic daily activities such as bathing, dressing, and preparing simple meals. For instance, in a function report dated February 8, 2013, Plaintiff indicated that he can bathe, but he must take quick showers because he is in pain if he stands too long; that sometimes he is in pain when he sits on the toilet; that he used to enjoy cooking meals, but now he can only make simple quick meals like sandwiches; that he shops for groceries around once a month but he needs a friend to help him; and that light household tasks take him longer because he needs to take breaks due to pain. (R. at 228–31). Plaintiff also indicated that although he took a road trip to California in December 2013, he often had to lie down in the back seat during due to pain. (*Id.* at 286). "An ALJ cannot disregard a claimant's limitations in performing household activities." *Moss*, 555 F.3d at 562. Here, the ALJ did not "build a logical bridge between the evidence and his conclusion" when he failed to discuss these limitations when finding that Plaintiff's activities are inconsistent with the limitations recommended by the treating physicians. *Pratt v. Colvin*, No. 12 C 8983, 2014 WL 1612857, at *8–10 (N.D. Ill. Apr. 16, 2014).

### 4. *The ALJ failed to demonstrate that Dr. Peddinghaus's opinion was inconsistent with his own treatment notes.*

The ALJ found that "[Dr. Peddinghaus] notes in his medical source statement that the claimant suffers from sciatica, but as explained above, there is no objective evidence of radiculopathy or other neurological symptoms." (R. AT 25). As Plaintiff

16

correctly points out, this assertion is inaccurate. The record includes evidence of radiculopathy, positive straight leg raising, and neurological findings such as decreased sensation, numbness, abnormal reflexes, and decreased strength. (*Id.* at 337, 524, 559, 562, 837–40, 858, 881, 949–50, 979,1053–55); *see Scrogham v. Colvin*, 765 F.3d 685, 696-97 (7th Cir. 2014) (finding error when the ALJ used "faulty logic" in deeming evidence as inconsistent with treating physician opinion). The Commissioner fails to respond to this argument, thus waiving the issue. *Delapaz v. Richardson*, 634 F.3d 895, 900 (7th Cir. 2011) ("As the district court noted, appellants did not address that argument in their response brief below. Consequently, they waived the issue.").

Likewise, Plaintiff argues that the ALJ mischaracterized the record when he asserted that Dr. Peddinghaus's opinion was undermined by the doctor's own statement that Plaintiff should have "good control" with conservative treatment. (Dkt. 15 at 8). Plaintiff asserts that Dr. Peddinghaus's actual statement that "management with analgesics or poss[ible] injections into the area of L5-S1 should help to control the pain" (R. at 1103) is not inconsistent with the limitations Dr. Peddinghaus proposes. Indeed, the ALJ does not explain how this statement by Dr. Peddinghaus is internally inconsistent with his opinion. The Commissioner also does not respond to this argument, thereby waiving the argument. *Delapaz*, 634 F.3d at 900.

### 5. *The ALJ failed to address regulatory ffactors*

Finally, when an ALJ determines to not accord controlling weight to the treating physicians, he must address the factors listed in 20 C.F.R. § 404.1527 to determine

17

what weight to give those opinions. Social Security Ruling (SSR)[9] 96-2p. SSR 92-2p states that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." (*Id.*) Here, the ALJ failed to address many of the enumerated factors provided in 20 C.F.R. § 404.1527. Specifically, the ALJ did not discuss the nature and extent of the treatment relationship, the frequency of examinations, the supportability of the decision, the consistency of the opinion with the record as a whole, or whether Drs. Kim and Peddinghaus had a relevant specialty. The ALJ must "sufficiently account [ ] for the factors in 20 C.F.R. 404.1527." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013). The ALJ did not do so here, preventing this Court from assessing the reasonableness of the ALJ's decision in light of the factors indicated in 20 C.F.R. § 404.1527.[10] For these reasons, the ALJ did not offer substantial evidence for rejecting the opinions of Drs. Kim and Peddinghaus, which is an error requiring remand.

---

[9] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

[10] Here again the Commissioner offers a rationale not cited by the ALJ that the length of the treating relationship of Drs. Kim and Peddinghaus do not weigh in their favor. (Dkt. 20 at 5). This argument is without merit. The Commissioner asserts that Dr. Kim only saw Plaintiff on three occasions and that Dr. Peddinghaus, although he was a treating physician for a number of years, offered an opinion following a 15-month hiatus from treating the Plaintiff. (*Id.*). The Commissioner fails to explain how the length of these treating relationships would be outweighed by a non-treating ME. Additionally, the argument is an impermissible post hoc rationalization. *Scott*, 647 F.3d at 739.

**B. Other Issues**

Because the Court is remanding to reevaluate the weight to be given to the treating physicians' opinions, the Court chooses not to address Plaintiff's other arguments that the ALJ committed multiple errors with symptom evaluation, improperly assessed obesity, and failed to follow Social Security Ruling 96-8p. However, on remand, after determining the weight to be given to the treating physicians' opinions, the ALJ shall reevaluate Plaintiff's physical and mental impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Dkt. 15) is granted. Defendant's Motion for Summary Judgment (Dkt. 19) is denied. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: April 3, 2017

MARY M. ROWLAND
United States Magistrate Judge